**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------ x
UNITED STATES OF AMERICA         :
                                 :
v.                               :  Crim. No. 3:17-cr-205 (AWT)
                                 :
DWAYNE THOMPSON                  :
------------------------------ x
```

<u>**RULE 23(c) FINDINGS**</u>

Dwayne Thompson was charged in a three-count indictment. On June 1, 2022, he waived his right to a jury trial. At the beginning of the trial, the government dismissed Count Three of the Indictment. The trial proceeded on the charges against Thompson in the first two counts. Count One charges Conspiracy to Distribute and to Possess with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i), and 846, and Count Two charges Attempt to Possess with Intent to Distribute One Kilogram or More of Heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i), and 846.

As set forth below, the government has proved beyond a reasonable doubt each of the elements of the charges in Count One and Count Two, and the court finds the defendant guilty on both counts.

## I.   COUNT ONE: CONSPIRACY TO DISTRIBUTE OR TO POSSESS WITH INTENT TO DISTRIBUTE HEROIN

To satisfy its burden of proof with respect to Count One, the government was required to prove, and did prove, the

-1-

following three elements beyond a reasonable doubt:

> **First**, that two or more persons agreed to distribute or to possess with intent to distribute a controlled substance;
>
> **Second**, that the defendant knowingly and willfully became a member of the conspiracy with the specific intent of furthering its objective; and
>
> **Third**, that the conspiracy involved at least one kilogram of heroin.

**A.   First Element: Existence of an Agreement**

The evidence established beyond a reasonable doubt that the defendant and Jose Carrasquillo agreed to distribute heroin and to possess heroin with the intent to distribute it.

Prior to 2017, each of Thompson and Carrasquillo had a business which made deliveries for FedEx. Thompson owned his business, and Carrasquillo had two co-owners. Thompson and Carrasquillo met as a result of the work they did for FedEx and became close friends. By early 2017, neither of them was doing work for FedEx.

Thompson and Carrasquillo discussed going into business together, and by May 26, 2017, they had formed a partnership, Blackout Tints & Vinyl ("Blackout Tints"), and opened business bank accounts over which they had equal access and complete authority. The business was located in a space at 61 Arrow Road in Wethersfield, Connecticut; Carrasquillo had been leasing the space before the two of them went into business together. Thompson was primarily responsible for the operations of the

business. Carrasquillo would pop in and out. Only Thompson and Carrasquillo had access to the office. They both had keys and locked the office when neither of them was there. They continued to be close friends, and Carrasquillo was a regular visitor at Thompson's home.

Kyle, a/k/a Crispy, was an employee of the business. Kyle built secret compartments in the office in the loft and in another location. Thompson and Carrasquillo both knew about the secret compartments.

An informant known as Alex had previously provided the DEA information about a FedEx contractor who used his route to distribute drugs. The DEA identified Carrasquillo as that FedEx contractor and decided to explore conducting a "reverse buy," i.e., the law enforcement agent would pose as the supplier of drugs and the target of the investigation would bring the purchase money.

Carrasquillo received a call from Alex, and they agreed to meet. On August 1, 2017, Alex and Carrasquillo met in Enfield. Alex informed Carrasquillo that he could supply him with heroin, and Carrasquillo expressed interest. The two of them agreed to meet again. On August 10, 2017, Alex and Carrasquillo met in Fairfield. Also at the meeting was an undercover agent who was posing as Alex's boss. The participants discussed a price of $42,000 per kilogram of heroin. After that meeting, Carrasquillo

reached out to Alex expressing an interest in buying three kilograms of heroin. Carrasquillo and Alex met on August 21, 2017 in Enfield. They agreed to consummate the transaction the following day, August 22, 2017.

Carrasquillo kept Thompson informed of the discussions with Alex, even while Thompson was in California with his family from August 7 to 13. Carrasquillo's testimony on this point is corroborated by the fact that Thompson's phone records reflect that he spoke to Carrasquillo the day before and the day after the August 10, 2017 meeting with Alex and his boss.

On August 22, 2017, Thompson and Carrasquillo met at Carrasquillo's house to count the money. They needed $126,000 to purchase the three kilograms of heroin. Carrasquillo had realized $60,000 from the sale of his interest in his FedEx business. That $60,000 made up a part of the $126,000. The balance of the $126,000 came from Thompson and Carrasquillo jointly. After counting the money, Thompson and/or Carrasquillo put the money in a duffle bag, and they went to Blackout Tints.

Alex had suggested to Carrasquillo that they consummate the transaction in Enfield. Carrasquillo, however, had insisted on meeting on Sullivan Avenue in South Windsor, an area Carrasquillo knew very well. Carrasquillo had a close cousin, Randy Texidor, who was regularly at Blackout Tints, even though he did not work for or have dealings with the business.

Carrasquillo told Texidor to bring a tester to test the heroin.
Texidor made arrangements to bring Kyle, who was a heroin user.

At 3:06 p.m., Carrasquillo, Texidor, and Thompson gathered
in the driveway at Blackout Tints. At 3:13 p.m., Thompson was
sitting in Carrasquillo's black Acura, and Carrasquillo walked
over to the Acura, stayed there for about thirty seconds, and
then walked back over to a group of people. Texidor and Kyle
were in that group. Carrasquillo then walked to one vehicle,
Texidor and Kyle walked to a separate vehicle, and both of these
vehicles left. Thompson followed in the Acura.

Because Carrasquillo was concerned about getting ripped
off, he had put precautions in place in addition to bringing
Kyle to test the heroin. He had arranged to meet Alex at the
site of Alex's old restaurant on Sullivan Avenue but arranged
for the other two vehicles to be at two other locations. Texidor
and Kyle had been told to go to the Mr. Sparkle Car Wash, which
is also on Sullivan Avenue, and Thompson went to the Dairy
Queen, which is across the street from the car wash.

Texidor had a firearm in his vehicle. Kyle had
paraphernalia to test the heroin. On the back seat of the Acura
being driven by Thompson was the duffle bag containing the
$126,000 in cash. The duffle bag of cash was with Thompson
because he was Carrasquillo's trusted business partner and some
of the cash belonged to Thompson. Thompson had a firearm in the

waistband of his sweatpants. The firearm was owned by
Carrasquillo's girlfriend and was kept at Blackout Tints.
Thompson gave an implausible explanation for why he had taken
that firearm from Blackout Tints and had it in his waistband.

Carrasquillo arrived at the old restaurant at approximately
3:51 p.m., and Alex arrived approximately five minutes later.
Alex insisted on seeing the money, so Alex and Carrasquillo got
into Alex's pickup truck and drove to the Dairy Queen, where
Alex pulled up next to the Acura occupied by Thompson at around
4:00 p.m. Thompson had never before seen that vehicle.
Carrasquillo opened the back passenger door, and he then reached
in and pulled over and opened the duffle bag to show Alex the
money. Thompson claims he had simply been told to meet
Carrasquillo at the Dairy Queen and was given no explanation as
to why and never asked why; this was in the context of a
business relationship where Carrasquillo was not Thompson's boss
but his equal partner, and Thompson was the partner primarily
responsible for the operations of the business. Thompson claims
that he had no idea the $126,000 was in the back seat. But when
Thompson was looking toward the back seat, he did not do or say
anything that indicated a lack of understanding as to what was
occurring.

After the "money flash," Alex and Carrasquillo got back in
Alex's pickup and headed back to the old restaurant. Shortly

thereafter, at 4:03:59 p.m., Thompson received and answered a call from Texidor, who had been across the street at the car wash during the "money flash." It lasted for one minute and thirty-one seconds. Thompson's phone listed Texidor as a contact under the name "Whites," so it is apparent that Texidor was not merely someone Thompson had seen around Blackout Tints. At 4:06:27 p.m., Thompson called Texidor, and they talked for twenty-eight seconds.

At 4:09 p.m. and 4:10 p.m., Thompson received very short calls from Carrasquillo, who simply directed him to leave. Again, Thompson, who claims he had simply been told by Carrasquillo to meet him, had no lack of understanding or confusion. Almost immediately thereafter, Thompson was taken into custody, as were Texidor and Kyle, while Carrasquillo escaped. Again, Thompson, who claimed he was unaware of the drug deal, gave no indication that he was confused about what was going on or why he had been arrested.

Thompson's claim that he was an innocent bystander who went to meet Carrasquillo simply because Carrasquillo asked him to do so is too implausible to create a doubt as to whether the government has proven its case. The court can conceive of no reason why Carrasquillo would take such care in making arrangements for the other aspects of the drug buy, but leave the money with someone who was not part of the deal and thus

could not be relied on to be in the right place at the right time, and, moreover, someone who was even unaware that something of great value was in the car. Under that scenario, Texidor, or even Kyle, would have been a more logical choice.

There is direct evidence proving that Thompson entered into the unlawful agreement with Carrasquillo charged in Count One in the form of Carrasquillo's testimony that he kept Thompson apprised of the progress of the discussions with Alex; that the two of them pooled their money to come up with the $126,000 to purchase the heroin; and that the two of them counted the money at Carrasquillo's house, put it in the duffle bag, and knew the duffle bag was in Carrasquillo's Acura. Because the court was familiar with Carrasquillo prior to the trial, it would be an understatement to say that the court is aware that Carrasquillo's testimony has to be scrutinized with great care and viewed with particular caution. The defense quite legitimately highlighted a number of reasons why Carrasquillo's testimony cannot be accepted at face value. However, his testimony was corroborated in material respects, including by undisputed evidence of Thompson's actions from the time he gathered with Carrasquillo and Texidor at Blackout Tints to the time of his arrest; evidence corroborating the extent to which Carrasquillo took precautions when making the arrangements for the drug buy; the location of the $126,000 and the fact that

Thompson had the gun in his waistband; the timing of the telephone calls between Thompson and Texidor and between Thompson and Carrasquillo; and Thompson's testimony that he traveled to California with Carrasquillo for the purpose of facilitating illegal drug trafficking.

The defense argues that this element of the offense was not proven because, when cross-examined at trial, Carrasquillo could not repeat what he said to Thompson when they formed the illegal agreement. However, the government was not required to prove that Thompson and Carrasquillo met together and entered into an express or formal agreement, or that they stated in words or writing what the agreement was.

**B.    Second Element: Knowingly, Willfully, and with Specific Intent**

The findings above with respect to the first element also proved beyond a reasonable doubt that Thompson knowingly and willfully became a member of the conspiracy with the specific intent of furthering its objective.

These findings show that Thompson did not act as a result of mistake, accident, mere negligence, or some other innocent reason, but rather acted with a full understanding of the unlawful purpose of the conspiracy, and that his goal was to purchase three kilograms of heroin with Carrasquillo.

In addition, the government established this element with evidence that Thompson had a heroin source in California; that

Thompson and Carrasquillo pooled money to purchase heroin from Thompson's source; that the two of them stored the heroin at Blackout Tints and at Carrasquillo's house; that Carrasquillo was responsible for distributing it to customers and Thompson was responsible for sending payments to the source; that Thompson was aware that Carrasquillo had a source in California for marijuana; and that Thompson and Carrasquillo traveled together to California to facilitate marijuana distribution by having Carrasquillo meet Thompson's acquaintance, Bossy.

The evidence that, at an earlier time, Thompson had assisted Bossy in shipping marijuana from California to Connecticut using Thompson's FedEx business and that Thompson had concealed this activity from FedEx, also helped prove this element.

### C.   Third Element: At Least One Kilogram of Heroin

The evidence established beyond a reasonable doubt that the conspiracy involved at least one kilogram of heroin. Carrasquillo expressly negotiated with Alex to purchase three kilograms of heroin. The price was $42,000 per kilogram, and Thompson and Carrasquillo pooled their money so they had $126,000 (i.e., the cost for three kilograms), which was in the vehicle driven by Thompson at the time of his arrest.

## II.   COUNT TWO: ATTEMPT TO POSSESS WITH INTENT TO DISTRIBUTE

To satisfy its burden of proof with respect to Count Two, the government was required to prove, and did prove, the following two elements beyond a reasonable doubt:

> **First**, that the defendant intended to commit the crime of possession with intent to distribute at least one kilogram of heroin; and

> **Second**, that the defendant took a substantial step toward accomplishing the crime, beyond mere preparation.

### A.   First Element: Intended to Commit the Crime of Possession with Intent to Distribute Heroin

To establish this element, the government was required to prove, and did prove, beyond a reasonable doubt four facts.

The government was required to prove, one, that Thompson intended to possess a controlled substance and, two, that he must have known that the substance is a controlled substance. These facts were proven beyond a reasonable doubt. Heroin is a controlled substance. Also, as discussed with respect to Count One, Thompson knew that Carrasquillo had negotiated for the purchase of three kilograms of heroin at the price of $42,000 per kilogram, which is why they needed $126,000. Thompson drove to the Dairy Queen fully expecting that Alex would turn over to Carrasquillo or his designee three kilograms of heroin. Even if the heroin was turned over to Carrasquillo or Texidor, and in the physical possession of someone other than Thompson, Thompson

-11-

was helping to pay for the heroin and had the ability and intention to exercise control, together with Carrasquillo, over the heroin because they were partners in the heroin distribution business. Thus, Thompson intended to have legal possession even if he did not have physical possession of the heroin.

Three, the government has proven beyond a reasonable doubt that Thompson and Carrasquillo were not only partners in Blackout Tints, but also were partners in the business of acquiring and distributing drugs. Their only purpose in seeking to acquire the three kilograms of heroin was to distribute it.

Four, as discussed above with respect to the third element of Count One, the government has proven beyond a reasonable doubt that the evidence established that at least one kilogram of heroin was involved. Thompson possessed $126,000, which was sufficient to purchase three kilograms of heroin at the agreed-upon price of $42,000 per kilogram.

B.    **Second Element: Substantial Step**

The evidence established that Thompson took substantial steps, beyond mere preparation, toward accomplishing the offense. As discussed above, Thompson contributed funds toward the purchase of the three kilograms of heroin. In addition, after conferring with Carrasquillo, he drove the $126,000 to the Dairy Queen so that it would be available to consummate the transaction. This was an essential step in that, without the

money, there could have been no purchase.

**III. CONCLUSION**

Because the government has proven beyond a reasonable doubt each of the elements of the charges in Count One and Count Two, a finding of guilty shall enter with respect to each of those counts.

It is so ordered.

Dated this 16th day of June 2022, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge